UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| AMBER L. GREENE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>WHITE, JACOBS & ASSOCIATES, INC.<br><br>　　　　Defendant. | Case no. 4:23-cv-00452 |

## COMPLAINT

**NOW COMES** Amber L. Greene ("Plaintiff"), by and through his undersigned counsel, complaining as to the conduct of White, Jacobs & Associates, Inc. ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq*.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the CROA and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant is domiciled in the Eastern District of Texas, and a substantial portion of the events or omissions giving rise to the claims occurred within the Eastern District of Texas.

### PARTIES

2. Plaintiff is a consumer over 18-years-of-age who, resides in Los Angeles, California.

1

3. Defendant is a credit repair company that claims to achieve its client's credit repair and financial goals in as little time as possible.[1] Defendant maintains its principal place of business at 200 Chisholm Pl #250, Plano, Texas 75075.

4. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

5. In early 2023, Plaintiff needed to address various debts and obtain a personal loan to help alleviate her financial hardships and debts that she had accumulated, and so she began searching for credit repair and debt consolidation programs to assist in her efforts.

6. Because Plaintiff had used Defendant in the past and was happy with the result, she contacted Defendant to determine if would be able to assist her.

7. Plaintiff explained to Defendant the nature of five (5) medical debts she wanted to enroll in Defendant's credit repair program and the deadline of March 23, 2023 in which to have the debts resolved so that she could obtain the financing that she was hoping to obtain.

8. Defendant advised that it could enroll her debts in its credit repair program. However it advised that they should not attempt to negotiate the accounts and instead go through its full credit repair process and get the accounts completely removed from her credit reports.

9. Defendant promised Plaintiff that it could get her medical debts completely removed by her financing deadline of March 23, 2023; but, if for some reason it was unable to achieve those results, Plaintiff would be refunded the initial payment that Defendant required.

---

[1] https://www.whitejacobs.com/credit-repair/?gclid=EAIaIQobChMIt-CliYnu_gIVIZVbCh1BsQtGEAAYASAAEgIB6fD_BwE

10. Plaintiff was concerned that going through the full credit repair process would ultimately take too long and force her to miss out on her financing opportunity.

11. Ultimately, Plaintiff detrimentally relied on Defendant's promises and enrolled in Defendant's program on January 11, 2023.

12. A summary of Plaintiff's enrolled accounts includes an estimated total of $10,000 in enrolled debts.

13. Plaintiff was explicitly informed that if she made an initial payment of $1,000 then $115 monthly payments to Defendant, Defendant would be able to deliver results such as improving her credit rating, and resolving the debts negatively reporting as a result of her medical and financial hardship by March 23, 2023.

14. During that time frame, Defendant largely failed to perform the represented services for Plaintiff, let alone achieve the benefits or results that it represented it would achieve for Plaintiff.

15. Specifically, despite Plaintiffs making $1345 in payments to Defendant, Defendant did not resolve the accounts for Plaintiff as promised.

16. Upon information and belief, rather than apply Plaintiff's payments to resolving obligations, Defendant instead caused Plaintiffs to be charged for various service and other related fees before performing, or fully performing, the services justifying Defendant's retention of such fees.

17. Plaintiff was informed that the subject accounts were being taken care of.

18. Despite Plaintiff making her monthly payments to Defendant, believing that her debts were actively being resolved, Plaintiff's debts have not been satisfied by Defendant.

19. Defendant's refusal to assist Plaintiff represents the deceptive nature of Defendant's representations that it will work with its customers to resolve debts with problematic creditors.

20. Further, upon information and belief, Defendant knowingly provided Plaintiff a false sense of hope in that it could increase her credit score and remove the medical debts by March 23, 2023, so that she could obtain her desired financing so as to compel acceptance of their terms, only to turn around and fail in providing the promised results by the promised deadline.

21. Upon further information and belief, Defendant knowingly informs consumers that they can resolve their debts, despite similarly knowing it would be unable to achieve those represented results, in particular considering the nature of the debts which were enrolled in its program.

22. Upon realizing the nature of Defendant's scheme and the full extent of their misrepresentations, Plaintiff contacted Defendant to address the Defendant's conduct.

23. Plaintiff was informed that Defendant had primarily focused on two (2) accounts that had late payments, but had sent its disputes to the incorrect addresses.

24. Plaintiff canceled her contract with Defendant in April 2023 and demanded to be refunded the $1,000 initial payment as Defendant had failed to achieve its promised results.

25. To this day, Defendant has refused to refund her the $1,000 that she paid Defendant.

26. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned counsel regarding their rights.

27. Plaintiff have suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, incurrence of inappropriate

court fees, as well as numerous violations of his state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

28. Plaintiff repeats and realleges paragraphs 1 through 27 as though fully set forth herein.

29. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

30. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

    a.    **Violations of CROA § 1679b(a)**

31. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

32. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Defendant advised that it would remove the enrolled debts by March 23, 2023. Defendant

not only failed to achieve its promised results by March 23, 2023, but it failed in removing a single enrolled debt from the Plaintiff's credit report.

33. Defendant further violated the above referenced provision of CROA by deceptively promising a refund of Plaintiff's initial payment of $1,000 if it was unable to achieve its promised results, only to turn around and refuse to refund her when it did not remove any of the enrolled debts from her credit report in the desired amount of time.

### b.  Violations of CROA § 1679b(b)

34. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

35. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant's practice of charging a retainer for services upfront, before such services is performed, is inherently in violation of the CROA. Defendant similarly withheld sums for credit repair services it never actually performed.

### c.  Violation of CROA § 1679c

36. The CROA, pursuant to 15 U.S.C. § 1679c, outlines various disclosures that CROs must provide to consumers prior to entering into contracts with consumers.

37. Defendant violated § 1679c through its complete failure to provide Plaintiff a copy of the required disclosures.

38. As alleged above, Plaintiff was harmed by Defendant's material misrepresentations.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Arbitrator deems just and appropriate.

Dated: May 18, 2023

Respectfully submitted,

*s/ Marwan R. Daher*
Marwan R. Daher, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Ave.,
Suite 200
Lombard, Illinois 60148
(630) 575-8181 (phone)
mdaher@sulaimanlaw.com